UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DALLAS JAMES SPARKS,

        Plaintiff,                      Case No. 2:25–cv–7

v.                                        Honorable Paul L. Maloney

J. CLARK et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104–134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint without prejudice for failure to state a claim.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff names as Defendants in this action Assistant Deputy Warden J. Clark, Assistant Deputy Warden M. Lacrosse, Resident Unit Manager M. Davidson, Correctional Officer Unknown Duncan, and Correctional Officer Unknown Fulgenzi. (Compl., ECF No. 1, PageID.2.)

In his complaint, Plaintiff alleges that on September 29, 2024, three prisoners entered Plaintiff's cell and remained there. (*Id.*, PageID.3.) One of these prisoners was on toplock sanction at the time and was supposed to be in his cell in another hallway. (*Id.*) Defendant Correctional Officers Duncan and Fulgenzi approached the cell and "knew a situation was going on[,] yet [they] did nothing to remove Plaintiff or the other prisoners out of the situation." (*Id.*) Duncan and Fulgenzi, by allowing the prisoners to congregate, violated MDOC policy and housing unit rules. (*Id.*) Less than 15 minutes after the C/Os left the cell, one of the prisoners stabbed Plaintiff in the head with a 7-8 inch homemade knife. (*Id.*) Plaintiff suffered a serious wound and received outside medical attention. (*Id.* at PageID.4) When Plaintiff was returned to URF, he received a fighting misconduct and was placed in segregation. (*Id.*)

On October 9, Plaintiff was seen by the Security Classification Committee (SCC), which consisted of Defendants Assistant Deputy Warden M. Lacrosse and Resident Unit Manager (RUM) M. Davidson. (*Id.*) Plaintiff requested these Defendants either transfer him or conduct an investigation into the incident. (*Id.*) However, these Defendants denied this request and informed

Plaintiff that, at the end of his 10-day detention, he would be placed back into general population. (*Id.* at PageID.5.)

On October 18, Plaintiff was ordered to return to general population, but he refused to go, asserting "the imminent risk of another serious physical assault." (*Id.*) Plaintiff was written up for disobeying a direct order and remained in detention. (*Id.*) At an October 28 hearing, Plaintiff reasserted his belief that he should not be returned to general population because of the risk of serious physical injury. (*Id.*, PageID.6.) Plaintiff was found guilty of disobeying the direct order and given another 10-day detention from November 3 to 13. (*Id.*) On October 29, Plaintiff restated his fears to Defendants Clark and Lacrosse, but these two informed Plaintiff they did not believe there was a risk in Plaintiff returning to general population and denied his request for an investigation or transfer. (*Id.*)

On November 13, Plaintiff was again ordered to return to general population; he again refused to go, was again written up for disobeying a direct order, and remained in detention. (*Id.*, PageID.7.) At a November 20 hearing, Plaintiff reasserted his fears but was found guilty and was given another 10-day detention from November 20 to 30. (*Id.,* PageID.8.) On November 22, an unnamed member of the SCC informed Plaintiff he was being placed in general population at the end of his detention; this person refused Plaintiff's request for a transfer or further investigation. (*Id.*)

On November 30, Plaintiff was again ordered to return to general population; he again refused to go, was again written up for disobeying a direct order, and remained in detention. (*Id.*, PageID.9.) At a December 9 hearing, Plaintiff reasserted his fears but was found guilty and was given another 10-day detention from December 9 to 19. (*Id.*, PageID.10.) On December 10,

3

Defendants Clark and Lacrosse once again informed Plaintiff he would be returned to general population at the end of his detention. (*Id.*)

Plaintiff seeks compensatory and punitive damages from each Defendant, among other relief. (*Id.* at PageID.11.)

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

Here, the complaint states that Plaintiff brings claims under the Eighth and Fourteenth Amendments to the U.S. Constitution for Defendants' failure to protect him from harm from other

4

prisoners. (Compl. at PageID.3.) Such claims brought by state prisoners arise under the Eighth Amendment's "cruel and unusual punishment" clause, as incorporated against the states under the Fourteenth Amendment due process clause, and are asserted under 42 U.S.C. § 1983. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

### III.  Eighth Amendment Failure to Protect

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. However, although "prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners," it is equally clear that not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials." *Id.* at 834 (citations and internal quotation marks omitted).

In order for a prisoner-plaintiff to state an Eighth Amendment claim, the plaintiff must allege facts indicating that, "'objectively,' he was 'incarcerated under conditions posing a substantial risk of serious harm.'" *See Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 834). The plaintiff must also show that "the official acted with 'deliberate indifference' to inmate safety, meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Id.* (quoting *Farmer*, 511 U.S. at 829, 834, 847).

5

Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011).

Here, Plaintiff contends his Eighth Amendment rights were violated when: (A) Defendant Correctional Officers Duncan and Fulgenzi failed to protect him from an assault by other inmates on September 29, 2024; and (B) Defendants Deputy Warden J. Clark, Warden M. Lacrosse, and RUM M. Davidson failed to protect him by refusing to consider housing for him other than in general population. (*See, generally*, Compl.)

### A. Correctional Officers Duncan and Fulgenzi

Though Plaintiff alleges that Defendants Duncan and Fulgenzi failed to protect him from other inmates on September 29, 2024 (*See* Compl. at PageID.3), he states no facts to show that these Defendants acted with deliberate indifference. *Reedy*, 988 F.3d at 912. Plaintiff states that Duncan and Fulgenzi saw the three prisoners congregating in his cell, in violation of department policy. (*See* Compl. at PageID.3.) Plaintiff also alleges that less than 15 minutes after Duncan and Fulgenzi left the cell, one of the prisoners stabbed Plaintiff in the head with a 7–8 inch homemade knife, causing a serious wound. (*See id.*) However, there are no facts to indicate that these Defendants knew of and disregarded a risk to Plaintiff. The complaint does not allege, for example, that Plaintiff and the inmates were fighting at the time Duncan or Fulgenzi were in the area, or that the prisoners were threatening Plaintiff in earshot of Duncan or Fulgenzi. Nor are there allegations of a history of conflict between Plaintiff and the inmates. Absent allegations from which knowledge of a sufficiently serious risk to Plaintiff's safety could be inferred, the complaint fails

6

to state a failure-to-protect claim against Defendants Duncan and Fulgenzi based on the September 29, 2024, inmate assault. *See Eads v. Tennessee*, No. 1:18–cv–00042, 2018 WL 4283030, at *6 (M.D. Tenn. Sept. 7, 2018) (dismissing Eighth Amendment claim for correctional officers' failure to protect the plaintiff from an inmate assault where "he does not allege any grounds for believing that any Defendant knew of and disregarded a risk to Plaintiff at the hands of these inmates—such as a known prior history of violence or threats of violence between [them] . . . or knowledge that these inmates possessed the weapons used against Plaintiff . . .").

Plaintiff does allege that Duncan and Fulgenzi "knew a situation was going on[,] yet [they] did nothing to remove Plaintiff or the other prisoners out of the situation." (*See* Compl. at PageID.3.) However, these conclusory allegations cannot support a failure-to-protect claim without factual allegations in support. *See Morin v. Erway*, No. 12–15406, 2013 WL 1875998, at *9 (E.D. Mich., May 3, 2013) (dismissing failure-to-protect claim where, though the complaint asserted that the defendant officer "had 100% knowledge" that the prisoners were going to assault the plaintiff, the complaint does not state how the officer knew this, or what basis the plaintiff had for making this assertion) (citing *Iqbal,* 556 U.S. at 680–83 (allegations that the defendants "knew of, condoned, and willfully and maliciously agreed" to subject the plaintiff to harsh conditions of confinement insufficient to plausibly suggest discriminatory state of mind)). To the extent Plaintiff asserts that Defendants "should have known" of an issue with the prisoners, such allegations have been rejected by the Sixth Circuit Court of Appeals in the Eighth Amendment context because it "comes close to 'suggest[ing] a classic negligence formulation.'" *Doe v. Jackson Loc. Sch. Dist. Bd. of Ed.*, 954 F.3d 925, 932 (6th Cir. 2020); *see also Farmer*, 511 U.S. at 835 (noting that negligent actions fall short of the deliberate indifference required to state an Eighth Amendment claim).

7

Finally, to the extent that Plaintiff attempts to assert an Eighth Amendment claim based on Duncan's and Fulgenzi's failure to enforce MDOC policy or housing unit rules (Compl. at PageID.3), such a claim fails. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Accordingly, Plaintiff fails to state a claim upon which relief can be granted against Defendants Duncan and Fulgenzi.

**B.     Assistant Deputy Wardens J. Clark and M. Lacrosse, RUM M. Davidson**

Plaintiff alleges that Defendants Clark, Lacrosse, and Davidson continually failed to protect him from the inmates who assaulted him on September 29, 2024, when they repeatedly denied his requests for further investigation or transfer, as well as when they ordered Plaintiff be returned to general population at the end of his detentions. (*See* Compl., PageID.4–10). This includes Lacrosse and Davidson's initial denial on October 9 (*id.* at PageID.5), Clark and Lacrosse's denials on October 29 (*id.* at PageID.6) and December 10 (*id.* at PageID.10); the Court presumes this also includes the similar denial made by an unnamed SCC member on November 22 (*id.* at PageID.8). Plaintiff's claim against these Defendants fails because there is no indication that Plaintiff was actually released into general population after the September 29, 2024 assault, or that if he was, any physical harm came to him during that time.

The complaint states that after Plaintiff was assaulted, he was taken to an outside hospital for treatment. (Compl. at PageID.4.) When he returned to URF, he was placed in segregation—where he remained at least through December 19, 2024. (*See id.* at Page.ID 4–10.) Further, Plaintiff signed and dated his complaint on January 2, 2025 and indicated he was no longer at URF, as he

had been transferred to LMF. (*See id.*, PageID.1) There are no facts to indicate that Plaintiff actually returned to general population before his transfer to LMF. *See Broskey v. Gidley*, No. 16–13572, 2017 WL 4052188, at *7 (E.D. Mich. Aug. 17, 2017) (finding failure-to-protect claim deficient where nothing "ever suggests that plaintiff was returned to the general population of the prison after he sought protection and before he was transferred to another facility," and noting that though the plaintiff was "ordered to return to the general population of the prison, he apparently refused such an order, and received a misconduct ticket for that refusal[, and] nothing suggests that he was actually sent back to general population"). More importantly, even assuming Plaintiff had been housed in general population at URF between December 19 and his transfer to LMF, the complaint contains no allegations that Plaintiff came to any physical harm or was further threatened by any inmate—much less that Defendants were aware of any such threats or harm. *See Walker v. Carbor*, No. 24–cv–11093, 2024 WL 2788398, at *7 (E.D. Mich. May 30, 2024) (dismissing failure-to-protect claim against defendant officers where the plaintiff had previously been assaulted by inmates, but where after his release into general population, he did not suffer any further physical injury from any inmate) (citing 42 U.S.C. § 1997e(e)); *Brant v. Tresslor*, No. 3:23–CV–179, 2023 WL 6451095, at *5 (E.D. Tenn. Oct. 3, 2023) (finding failure to protect claim based on an alleged failure to investigate an assault after it occurred was deficient where the plaintiff did not allege "she suffered any physical harm due to these omissions") (citing 42 U.S.C. § 1997e(e)). To the extent that Plaintiff's claims are based on his allegation that these Defendants (or any other Defendant) failed to adequately respond to his complaints or denied his grievances, prison officials are not liable under § 1983 for denying or failing to act on grievances. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008).

For these reasons, Plaintiff's complaint fails to state an Eighth Amendment failure-to-protect claim against Defendants Clark, Lacrosse, and Davidson.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith. Plaintiff is advised that should he appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   March 21, 2025                              /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge